UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES OLIVER AND LARRY TODMAN, <br><br> Plaintiffs, <br><br> v. <br><br> WINCOR NIXDORF CORPORATION, <br><br> Defendant. | Civil Action No.: 15-2921 (JLL) <br><br> OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Wincor Nixdorf Corporation's Motion for Summary Judgment ("Motion"), (ECF No. 74). Plaintiffs James Oliver and Larry Todman filed a Rule 56(d) motion, (ECF No. 85), and Defendant has filed a reply, (ECF No. 86). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Plaintiffs' Rule 56(d) motion and grants Defendant's Motion.

## I. BACKGROUND[1]

Plaintiffs Oliver and Todman are former employees of Defendant Wincor Nixdorf (hereinafter "Defendant" or "Wincor"). (Def. 56.1 ¶ 11). Plaintiff Oliver graduated from

---

[1] These background facts are taken from Defendant's statement of undisputed material facts, pursuant to Local Civil Rule 56.1, (ECF No. 76 ("Def. 56.1")), as well as Plaintiffs' Amended Complaint (ECF No. 3 ("FAC")). The Court notes that Plaintiffs did not submit a corresponding responsive statement of material facts. Accordingly, the Court treats the statements contained in Def. 56.1 as undisputed. *See* L. Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.")

Passaic High School in 1972 and has a degree in aviation from the Teterboro School of Aeronautics. (Def. 56.1 ¶ 2). Oliver began his career working as an aircraft technician for various companies. (Def. 56.1 ¶ 5). He subsequently worked at Kodak as a photo technician for eight years. (Def. 56.1 ¶ 4). Following his employment at Kodak, Oliver worked as an air compressor technician at Comarco for three years. (Def. 56.1 ¶ 3). Oliver then joined Wincor as a second-line field service engineer, performing maintenance on automated teller machines ("ATMs"). (Def. 56.1 ¶¶ 3, 11–12).

Plaintiff Todman graduated from Aviation High School in Queens, New York. (Def. 56.1 ¶ 7). Todman received an associate's degree in electrical technology from New York City Community College. (Def. 56.1 ¶ 8). Todman completed supplemental courses in electrical engineering technology at Farleigh Dickinson University and in electrical networking at Middlesex County Community College. (Def. 56.1 ¶ 9). Todman, like Oliver, worked at Wincor as a second-line field service engineer, beginning in May 2010. (Def. 56.1 ¶ 15). Following his employment at Wincor, Todman earned a certification for satellite installation from Goodman Networks, a DirecTV subcontractor. (Def. 56.1 ¶ 10).

Plaintiffs believed they were treated fairly while working for Defendant, (Def. 56.1 ¶¶ 32–36, 39), however, Defendant terminated Plaintiffs as part of a broad reduction in force ("RIF") beginning at the end of November 2010 and continuing through the end of October 2011, (Def. 56.1 ¶¶ 45, 49). The RIF resulted in the termination of seven other second-line field service engineers in New Jersey. (Def. 56.1 ¶ 49). Of the nine total second-line service engineers terminated in the RIF, four were white, three were black, one was Asian, and one was two or more races. (Def. 56.1 ¶ 50). Wincor developed objective criteria to measure the

performance of the second-line field service engineers and ranked them based on the results of those performance measurements. (Def. 56.1 ¶ 47). Wincor used those results to determine who it would terminate as part of the RIF. (Def. 56.1 ¶ 47). Oliver ranked last in performance among central New Jersey second-line field service engineers when Wincor ran the numbers in May 2011. (Def. 56.1 ¶ 52). Todman ranked last in performance among central New Jersey second-line field service engineers when Wincor reran the performance measurements in June 2011. (Def. 56.1 ¶ 53). Wincor did not hire anyone to fill the jobs held by Plaintiffs from July 2010 through August 2012. (Def. 56.1 ¶ 54).

Defendant terminated Oliver on May 31, 2011 and Todman on July 29, 2011. Kenrick Gangadin, Plaintiffs' supervisor, informed both Plaintiffs that they were being terminated. (Def. 56.1 ¶¶ 18, 58, 81). In both instances, Gangadin requested that Plaintiffs drive to meet him so that he could inform Plaintiffs of their termination. (Def. 56.1 ¶¶ 56–57, 80–81). At each meeting, Gangadin called in to Wincor's Human Resources department so that HR could also speak to Plaintiffs. (Def. 56.1 ¶¶ 58, 81). At the close of these meetings, Gangadin presented each plaintiff with a severance agreement (the "Agreement"). (Def. 56.1 ¶¶ 60–61, 83–84). The section of the Agreement containing the language of the mutual release of claims is Section 4.1 and is titled "Mutual Release." (Def. 56.1 117(c)). It reads:

> <u>Mutual Release</u>. Each party releases and forever discharges the other Party and its respective successors and assigns, from any and all Claims, known or unknown, which the releasing Party may have against the other as of the date of this Agreement, including matters arising out of Employee's employment with Company or its termination. This release includes, but is not limited to, Claims for: breach of any express or implied contract; fraud; misrepresentation; breach of the implied covenant of good faith and fair dealing; bad faith; wrongful termination; negligent or intentional infliction of emotional distress; bodily injury; invasion of privacy; defamation; interference with economic relations; termination of employment in violation of public policy; tort claims; and common

> law claims. This release also applies to any claims based on alleged violation of
> any federal, state or local statute, regulation, ordinance or constitution including,
> without limitation: the California Fair Employment and Housing Act; Title VII of
> the Civil Rights Act of 1964; the Age Discrimination in Employment Act of
> 1967; Executive Order 11246; the Americans With Disabilities Act of 1990; The
> Family and Medical Leave Act of 1993; the Worker Adjustment Retraining And
> Notification Act (WARN); the Employee Retirement Income Security Act of
> 1974; and any similar state or local laws. The Parties agree not to assert any
> Claim that has been released by them under this Section 4.

(ECF No. 76-7 at 4). Gangadin informed both Plaintiffs that they would have to sign the Agreement to receive two weeks' severance pay. (Def 56.1 ¶¶ 60, 85). Neither Oliver nor Todman signed the Agreement on the spot. Oliver brought it home with him and consulted with an attorney regarding the Agreement. (Def. 56.1 ¶¶ 67–68). On June 21, 2011, three weeks after he was terminated, Oliver signed the Agreement and sent it to Defendant. (Def. 56.1 ¶¶ 74–75). Defendant received Oliver's signed Agreement on June 24, 2011, and paid Oliver two weeks' severance on the June 30, 2011 payroll date. (Def. 56.1 ¶¶ 78). Todman also brought the Agreement home with him and took two weeks to think about it. (Def. 56.1 ¶¶ 87). Todman signed the Agreement on August 12, 2011 and Wincor received it that same day. (ECF No. 76-7 at 11; Def. 56.1 ¶ 95). Wincor then executed Todman's Agreement and paid him his two weeks' severance on the August 31, 2011 payroll date. (Def. 56.1 ¶ 95).

Almost four years after Defendant terminated Plaintiffs, Oliver filed this lawsuit against Wincor on April 24, 2015. (Def. 56.1 ¶ 1). Oliver's pleading alleged claims of a hostile work environment, failure to promote, discriminatory failure to pay overtime wages, and wrongful termination, all in violation of 42 U.S.C. § 1981. (*See generally* ECF No. 1). On May 18, 2015, Oliver filed an amended complaint, which Todman joined, alleging his own claim of wrongful termination under 42 U.S.C. § 1981. (Def. 56.1 ¶ 6). Plaintiffs, who are both black, believe that

4

they were wrongfully terminated because of their race. (Def 56.1 ¶¶ 97, 112). With respect to Oliver's hostile work environment claim, he believes that a hostile work environment was created when Wells Fargo employees watched him as he repaired Wells Fargo ATMs and when one Wells Fargo employee questioned him regarding $600 missing from an ATM. (Def. 56.1 ¶¶ 100–101). As for his discriminatory failure to pay overtime wages claim, Oliver admits that Wincor paid him his overtime wages without fail. (Def. 56.1 ¶¶ 110–11). Lastly, regarding his failure to promote claim, Oliver believes that Wincor promoted a white employee, Chris Beronio, to a "lead" position over him, despite the fact that Oliver never applied for the "lead" job and had no proof of the promotion other than his own assumption based on Beronio's word. (Def. 56.1 ¶¶ 102–09).

## II.     <u>PLAINTIFF'S RULE 56(D) MOTION</u>

In lieu of an opposition to Defendant's Motion, Plaintiffs filed a motion under Federal Rule of Civil Procedure 56(d). Where the party opposing summary judgment "believes that s/he needs additional time for discovery, Rule 56(d) specifies the procedure to be followed." *Pa., Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012). Under Rule 56(d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). In this Circuit, Rule 56(d) imposes "a requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Phila.*, 855 F.2d

5

136, 139–40 (3d Cir. 1988).

Plaintiffs' Rule 56(d) motion states that there is a report written by the consulting firm McKinsey & Co. that Defendant did not provide during discovery. (ECF No. 85 ¶¶ 8–9). Plaintiffs argue that Wincor contracted McKinsey & Co. to write this report in connection with the RIF that resulted in Plaintiffs' termination, and as such, it is a necessary component of discovery that "likely explains the rationale for the RIF." (ECF No. 85 ¶ 8; ECF No. 85-1 at 5). Plaintiffs' Rule 56(d) motion also requests that Defendant "disclose the racial make-up of the 115 individuals who lost their jobs as senior field service engineers in the United States." (ECF No. 85 ¶ 18).

A district court will normally grant a Rule 56(d) motion as a matter of course, "unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law" or "the Rule 56(d) declaration is inadequate." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (citing *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007); then citing *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986)). As explained in more detail below, this Court finds that Plaintiffs released their claims against Defendant, and therefore, any information contained in the McKinsey & Co. report would not be "material to [Defendant's] entitlement to judgment as a matter of law." *Shelton*, 775 F.3d at 568.

Plaintiffs are in possession of the severance agreements signed by Oliver and Todman. (Def. 56.1 ¶¶ 115–16). Moreover, all the undisputed facts necessary to evaluate the validity of Plaintiffs' release of their claims against Defendant are available, *see infra* pt. III, and Plaintiffs' Rule 56(d) motion does not argue that any information in the McKinsey & Co. report would have any bearing on the Court's decision as to whether Plaintiffs' released their claims.

Plaintiffs admit that "a long time ha[s] been spent on discovery" and that Magistrate Judge Joseph A. Dickson has already concluded that enough time has been spent on discovery. (ECF No. 85 ¶¶ 11–12). This Court may thus grant summary judgment, since "the party opposing summary judgment has had 'an adequate opportunity to obtain discovery.'" *Smith v. Depuy Orthopaedics Inc.*, 552 F. App'x 192, 195 (3d Cir. 2014) (quoting *Dowling*, 855 F.2d at 138–39). For the aforementioned reasons, the Court denies Plaintiffs' Rule 56(d) motion and proceeds to the merits of Defendant's Motion.

### III.     **DEFENDANT'S SUMMARY JUDGMENT MOTION**

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding disputed issues of material fact, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

Defendant makes two arguments in favor of its Motion. The first is that Plaintiffs

knowingly and voluntarily waived the claims they raise in the instant lawsuit when they signed the Agreements upon the termination of their employment at Wincor. (ECF No. 75 at 8–19). The second is that even if there were no release agreement, Plaintiffs have failed to state a *prima facie* case of discrimination and have failed to establish pretext. (*Id.* at 19–26). Because the Court finds that summary judgment is appropriate on the grounds that Plaintiffs released their claims, it need not address Defendant's second argument.

The Third Circuit has established a seven factor, totality of the circumstances analysis in determining whether a release was knowing and voluntary. *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988).[2] These seven factors include, but are not limited to:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether Plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* (citing *Coventry v. U.S. Steel Corp. Pa. Human Relations Comm'n*, 856 F.2d 514, 523 (3d Cir. 1988)).

### A. Clarity and Specificity of the Release

The release that both Plaintiffs signed was sufficiently clear and unambiguous. The document was titled "Severance Agreement And Mutual Release Of All Claims," and was four pages long. (Def. 56.1 ¶¶ 117, 117(a)). The second page of the document contained a section

---

[2] "Since the *Cirillo* decision, the [Age Discrimination in Employment Act ("ADEA")] statute contains its own provision applicable to a release, thereby superseding the *Cirillo* decision in this respect." *Geraghty v. Ins. Servs, Office, Inc.*, 369 F. App'x 402, 405 n.2 (3d Cir. 2010) (citing *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997). Since Plaintiffs do not raise claims under the ADEA, *Cirillo* still applies.

with a bolded heading titled, "Releases and Waivers of All Claims." (Def. 56.1 ¶ 117(b)). That section contained the following language: "[e]ach party releases and forever discharges the other Party . . . from any and all Claims, known or unknown, which the releasing Party may have against the other as of the date of this Agreement, including matters arising out of Employee's employment with Company or its termination." (Def. 56.1 ¶ 117(c)). The release specifically stated that it applies to alleged violations of local, state, or federal law, including Title VII of the Civil Rights Act of 1964 and similar state and local laws. (Def. 56.1 ¶ 117(c)).

The Third Circuit Court of Appeals and courts in this district have held substantially similar releases to be sufficiently clear and unambiguous to satisfy the first *Cirillo* factor. *See, e.g., Geraghty*, 369 F. App'x at 406 (finding that a four page document releasing the defendant from "any and all claims, known and unknown, asserted and unasserted" including, but not limited to, claims under various federal and state causes of action was the kind of "clear and unambiguous language that an average person would understand to be all-encompassing"); *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005) (finding that the release was clear and specific, where it stated under the heading "General Release of Claims" that the employee "releases and forever discharges Employer . . . of and from any and all claims, known and unknown, which the Employe[e] has or may have against Employer as of the date of the execution of this Agreement and General Release"); *Garofola v. Vela Research USA, Inc.*, No. 14-2505, 2015 WL 3866238, at *5 (D.N.J. June 19, 2015) (finding that the release agreement "clearly and plainly states that Plaintiff will not sue Defendant" and that it "bars actions arising out of Plaintiff's employment relationship with Defendant or his termination, including, *without limitation*, claims for breach of contract, intentional infliction of emotional harm, or

9

discrimination or harassment based upon any federal, state, or municipal statute or ordinance relating to employment discrimination"). It is thus clear, by comparing the language of the Agreement with prior release agreements analyzed by this Court and by the Court of Appeals, that the Agreement is sufficiently clear and unambiguous to satisfy the first prong of the *Cirillo* analysis.

B. Plaintiffs' Education and Business Experience

Both Oliver and Todman have sufficient education to adequately comprehend the Agreement. The threshold level of education required to satisfy this factor is "minimal." *Ponzoni v. Kraft Gen. Foods, Inc.*, 774 F. Supp. 299, 310 (D.N.J. 1991). An associate's degree coupled with business experience is enough to meet the threshold for this factor. *Garofola*, 2015 WL 3866238, at *6. As outlined above, Plaintiffs graduated from high school, with Oliver going on to get a degree in aviation and Todman earning an associate's degree. Todman also completed additional college level coursework. Plaintiffs have been in the industry for some time and have each held several jobs. Thus, the Court concludes that Plaintiffs have enough education and business experience to adequately understand the Agreement, though it does not weigh significantly in favor of Defendant. *See Riddell v. Med. Inter-Ins. Exch.*, 18 F. Supp. 2d 468, 472 (D.N.J. 1998) (holding that a high school education with college course-work and business experience were likely sufficient for the plaintiff to understand the release, but that such an education did not weigh significantly in favor of either party).

C. The Amount of Time Plaintiffs Had Before Signing the Release

Twenty-one days is a sufficient amount of time to give a terminated employee to review a release before signing. *Cuchara*, 129 F. App'x at 731; *Garofola*, 2015 WL 3866238, at *6–7. It

is undisputed that Plaintiffs were given at least 21 days to review the Agreement. (Def. 56.1 ¶ 117(d) (stating that the Agreement provides that the employee "[h]as been given the opportunity, for no less than 21 days, to consider its terms"). Oliver took all 21 days to sign the release, while Todman only took 14, (Def. 56.1 ¶¶ 76, 79, 90, 93); though it is the amount of time given to Plaintiffs that matters, not the amount of time each employee took to review the agreement, *Sauter v. Fed. Home Loan Bank of N.Y.*, No. 08-899, 2009 WL 2424689, at *5 (D.N.J. Aug. 5, 2009). The third *Cirillo* factor weighs in favor of a knowing and voluntary release.

D. <u>Whether Oliver and Todman Knew or Should Have Known Their Rights</u>

Plaintiffs had enough information such that they knew or should have known about their rights regarding employment discrimination. Where an employer provides a handbook and other documents or postings informing employees of their rights regarding discrimination, courts in this district have found that a terminated employee knew or should have known about his or her rights upon executing a separation or release agreement. *See Garofola*, 2015 WL 3866238, at *7; *Mullen v. N.J. Steel Corp.*, 733 F. Supp. 1534, 1544 (D.N.J. 1990). At the time of Plaintiffs' employment with Defendant, Defendant had both an "Equal Employment Opportunity" policy and a Policy on Workplace Harassment. (Def. 56.1 ¶ 125). The Equal Employment Opportunity policy declared that Wincor would provide "equal employment opportunities to all employees without regard to race and in accordance with applicable federal, state, and local law." (Def. 56.1 ¶ 125(a)). Wincor's Policy on Workplace Harassment included a section titled "State and Federal Remedies," which read "[I]f you feel you have been subjected to unlawful harassment you may file a formal complaint with the federal anti-discrimination agency, called the Equal Employment Opportunity Commission ('EEOC'), and/or the anti-discrimination agency in your

own state." (Def. 56.1 ¶ 125(b)). That policy also listed the deadlines and contact information for the EEOC and various state anti-discrimination agencies. (Def. 56.1 ¶ 125(b)). When Plaintiffs began working for Wincor, they each signed an "Acknowledgement of Policies" form, declaring that they had been informed of Defendant's policies through the company employee website. (Def. 56.1 ¶¶ 14, 16). Additionally, all of Defendant's new hires went through an orientation where they learned of Defendant's policies, received an employee handbook, and gained access to Defendant's policies online. (Def. 56.1 ¶ 17). Plaintiffs thus knew or should have known of their rights and this factor thus weighs in favor of finding that Plaintiffs' release of their claims was knowing and voluntary.

E. Whether Plaintiffs Were Encouraged to or Actually Sought Counsel

The "important consideration is whether consultation with a lawyer was encouraged, . . . rather than whether the plaintiff in fact received the benefit of counsel." *Cirillo*, 862 F.2d at 454. The encouragement to seek counsel may be either verbal or in writing. *Id.* at 454 n.3. The plain language of the Agreement itself states that Plaintiffs have "been advised by this writing, and ha[ve] been given ample opportunity, to counsel with an attorney regarding this Agreement," and that "Employee acknowledges that Company has advised Employee to seek legal counsel about this Agreement, and that Employee has had ample opportunity to consult with an attorney of Employee's choice and to have that attorney review and explain to Employee the terms of this Agreement and its consequences." (Def. 56.1 ¶¶ 117(e)–(f)). In fact, Oliver brought the severance agreement to an attorney for review. (Def. 56.1 ¶¶ 67–68). Oliver testified that the attorney advised him to sign the severance agreement. (Def. 56.1 ¶ 69). These undisputed facts show that Defendant advised Plaintiffs in writing to seek the advice of counsel with regard to the

Agreement and thus weigh in favor of finding the release knowing and voluntary.

F. Whether There Was Opportunity for Negotiation of the Agreement

"[T]he existence of an opportunity to negotiate with respect to a release is a substantial indicia that its execution was knowing and voluntary," yet "the absence of such an opportunity is not as strong an indicia that a release is unknowing or involuntary." *Cirillo*, 862 F.2d at 454 n.4. Defendant's Human Resources director at the time of Plaintiffs' employment testified that former employees had the opportunity to negotiate a better deal upon termination, and that some of those employees did in fact negotiate. (Def. 56.1 ¶ 118). There is no record evidence suggesting that Plaintiffs tried and failed to negotiate, and at least one court in this district has held that the 21-day review period constitutes a sufficient opportunity to negotiate the terms of a release agreement, *Sauter*, 2009 WL 2424689, at *7. The Court thus considers this factor neutral.

G. The Consideration Given for the Severance Agreement

The consideration given in exchange for a waiver must exceed "the benefits to which the employee was already entitled by contract or law." *Garofola*, 2015 WL 3866238, at *9. In *Cuchara*, the plaintiff conceded that he received four weeks' compensation to which he would otherwise not be entitled in exchange for waiving his claims. 129 F. App'x at 731. In *Garofola*, the plaintiff conceded that the eight weeks' salary he received in exchange for waiving his claims was compensation he would otherwise not be entitled to. 2015 WL 3866238, at *9. Similarly, in *Sauter*, the Court held that four weeks' severance pay when the plaintiff was entitled to nothing constituted sufficient consideration to validate the waiver agreement. 2009 WL 2424689, at *7. While the two weeks' severance pay that Plaintiffs received is less than the four weeks' pay in

*Garofola* and *Sauter*, it is still in excess of what they were entitled to be contract or law: nothing. As such, this factor weighs in favor of enforcing the Agreement.

As explained in the preceding paragraphs, six of the seven *Cirillo* factors weigh in favor of enforcing the severance agreement and one factor is neutral. The totality of the circumstances indicate that Plaintiffs' waiver of claims was knowing and voluntary and the Agreement bars Plaintiffs from bringing the claims set forth in their Amended Complaint.

Plaintiffs' Answer to Counterclaims, however, also asserts that Defendants coerced Plaintiffs into signing the Agreement, that Plaintiffs were under duress when signing the agreement, and that the dates written in the signature block on the settlement agreements were not written by Plaintiffs.[3] (ECF No. 12 at 4). "[E]conomic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release." *Cirillo*, 862 F.2d at 452 n.2 (citing *Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885, 893 (3d Cir. 1975)). To properly allege economic distress under New Jersey law, a party "'must show that he has been the victim of a wrongful or illegal act or threat' that 'deprive[d] the victim of his unfettered will.'" *Sauter*, 2009 WL 2424689, at *8 (quoting *Cambell Soup Co. v. Desatnick*, 58 F. Supp. 2d 477, 492 (D.N.J. 1999)). Plaintiffs' own testimony shows that they were not deprived of their unfettered will. Oliver testified that when he refused to sign the Agreement at the close of his termination meeting, his supervisor said "okay" and offered him a ride home. (Def. 56.1 ¶¶ 61–62). Todman testified that his supervisor did not threaten him to sign the Agreement. (Def. 56.1 ¶ 86). Plaintiffs do not dispute these facts, and so there is no evidence showing that Plaintiffs

---

[3] The Court will not spend considerable time addressing Plaintiffs' claims that the dates in the signature block of the Agreement are fraudulent, as both Plaintiffs testified that they wrote the dates on the Agreements themselves. (Def. 56.1 ¶¶ 74, 89–91).

14

were under duress when signing the Agreements.

## IV.     CONCLUSION

For the aforementioned reasons, the Court finds that the additional discovery that Plaintiffs request is irrelevant to Defendant's Motion and that Plaintiffs knowingly and voluntarily released their claims. The Court denies Plaintiffs' Rule 56(d) motion and grants Defendant's motion for summary judgment. Plaintiffs' claims are dismissed with prejudice. An appropriate Order accompanies this Opinion.

DATED: January 22, 2018

JOSE L. LINARES  
Chief Judge, United States District Court

15